SAMUEL, Judge.
Plaintiff appeals from a judgment of the Civil Service Commission upholding her dismissal by the Superintendent of Police. The dismissal resulted from an internal investigation concerning questionable use of overtime by employees assigned to the police automobile pound. Plaintiff is a civilian employee of the department. She prepares the automobile pound payroll.
On April 16, 1977 at approximately 1 p. m. plaintiff was not in the office, having gone home with permission of her supervisor. Five police officers conducted a surprise inspection at the pound at that time. A partially completed investigation of the records for which plaintiff was responsible showed she had worked on that date, April 16, 1977, from 4 a. m. to 11 a. m., and overtime from 11 a. m. to midnight. The overtime item had been corrected to show overtime from 11 a. m. to 4 p. m. Other than the entry concerning her own overtime the remainder of the report for other employees was incomplete. Plaintiff was contacted at her residence and returned to the pound where she was questioned about the irregularities. Other employee statements indicated plaintiff previously had submitted false payroll records reporting she had worked overtime when she had not done so.
Thereafter, a former employee complained plaintiff had contacted her and threatened and intimidated her relative to the ongoing investigation. After receipt of this complaint plaintiff was ordered to make a further statement in this connection on May 25, 1977.
On that date plaintiff was advised her action in this regard was a possible criminal offense. She was advised of her constitutional rights and asked to make a statement. She refused. The interrogator then suspended the criminal action and opened the civil investigation, advising plaintiff of her rights, including the fact that anything she might say thereafter in the civil proceeding could not be used against her in any criminal action. She refused to make a statement[1] but later reconsidered,[2] rendered a written statement and answered questions propounded to her.
On June 29,1977 plaintiff was offered an opportunity to present facts in mitigation or explanation of her misconduct in office (the payroll records and the alleged intimidation) at the office of the Superintendent of Police.
By letter of July 5, 1977, specifying in detail all of the above outlined facts, the superintendent advised plaintiff she was dismissed for submitting fraudulent payroll records to obtain payment for unearned overtime on April 16, 1977, violation of nine articles of rules for the Administration of *54 the Department of Police,[3] and conduct contrary to the standards of service prescribed by the rules of the Civil Service Commission for the City of New Orleans.[4] In his opinion her comments at the meeting on June 29, neither explained nor mitigated such conduct.
Plaintiff appealed her dismissal to the Civil Service Commission. The Commission had before it plaintiff’s alleged misconduct on April 16, 1977 (in connection with payment for hours not worked), failure to make a statement in connection with an ongoing investigation, and misconduct relative to alleged threats and intimidation.
Following hearing on these allegations, the Commission found the incident of April 16 was proved,[5] the allegation relative to public intimidation was not proved because plaintiff denied it and the other person allegedly intimidated could not be found to testify, and the allegation relative to refusal to make a statement in disobedience of a direct order was proved. The Commission concluded both of the charges which had been proved constituted a serious breach of duty owed by appellant to her employer. It affirmed the action of the appointing authority and dismissed the appeal. We find a discussion of the refusal to make a statement unnecessary. The misconduct relative to payment for hours not worked, by itself, is sufficient for us to affirm the decision appealed from.
In this court appellant invokes the doctrine of estoppel. It is her position that she should not have been terminated for actions which have been tolerated, and which she was directed to do by supervisory personnel as a method of handling the problem of compensatory time. Her testimony in this regard is:
She has been a civilian employee of the department for eleven years. Her normal tour of duty at this time was from 4 a. m. to 11 a. m. Any hours worked after that time are paid for as overtime. In some prior years there was no such thing as overtime or compensatory time. In 1970 there was no overtime worked so they would come in from 5 to 11 to work.
In those previous years you could not make more than 20 hours per week and she worked 4 hours additional time because there was no one else to make the payroll. When employees had worked overtime in some previous years they were not paid for overtime but could take the time off on other days (compensatory time). Then the city cut out compensatory time and they were not paid for the additional hours worked. Therefore, in 1970, 1972, 1973 and 1977 she did not receive pay for overtime. She concluded the city owed her overtime for previous time she worked without being paid (including 1977) and consequently, when she currently listed herself for overtime which she did not work, she was reimbursing herself for earlier work for which she had not been paid.
In addition to the records of April 16, which did not reflect the hours she actually worked, she testified without objection to questions relating to her work on April 1, 2 and 3, wherein she listed herself as working 20 hours on each of those days. She admitted she had not worked those hours on April 1 (although she received full overtime pay therefor), leaving two and one-half hours early on April 1. She took off early at that time because her husband was “loaded” at a bar and she wanted to go get her car.
On April 16 she had permission from her supervisor to come in two and one-half hours late. Since she had permission she felt she was entitled to pay for the full *55 shift. (Her superior testified she did have his permission to come in late but he did not expect she would be paid for it.)
Sergeant Pittman, her superior, was commander at the automobile pound in 1977. He testified appellant was a good worker and gave a considerable amount of her free time to the automobile pound when they needed help in 1975 and 1976 for a four month period when there was no money for overtime or compensatory time. In 1977 she also worked several days without extra pay.
Relative to twenty-hour days, he stated he himself worked twenty-four-hour days during Mardi Gras (and apparently received full pay plus overtime) because he had his camper at the automobile pound and slept there the full eleven days of Mardi Gras.
Appellant’s other witness, Frank Luizza, stated employees could be given permission to come in late but they were not entitled to be paid for a full shift unless they worked 8 hours from the time they came in late. He did state that the department had tolerated a person coming late and being paid the full 8 hours.
Sergeant Charles Polit, also called as a witness by appellant, testified as to plaintiff leaving early on April 1. (He drove her to the bar to pick up her ear because of her husband’s condition.) He thought she should be paid full time even though she didn’t work because of the many times she had worked two or three hours overtime and never got paid for it.
The Commission refused to accept plaintiff’s explanation, to some extent corroborated by her superior, that because she had worked overtime in the past the city “owed” it to her. They concluded an employee had no right whatever to adjust grievances as to pay on an ad hoc basis and that the city does not owe her in the sense she would be able to stay home, report herself working and draw overtime pay for time spent at home. They felt all sorts of mischief would result if this individual subjective adjustment were permitted. We agree and add that this is particularly true of the person entrusted with preparing the payroll.
The decision appealed from is affirmed.

AFFIRMED.

GARRISON, J., dissents with written reasons.

. She wanted her attorney present and was given two hours, but left after one-half hour.

. After consulting her attorney.

. Referring to adherence of law, truthfulness, punctuality, attendance, devoting entire time to duty, ceasing to perform before end of period of duty, false and inaccurate reports, failure to obey instructions from authoritative source, neglect of duty, disobedience of orders.

. Specifically Rule IX, § 1, ¶ 1.1 — Maintaining Standards of Service.

.That appellant reported to work late and left early, yet the payroll showed she had worked a full shift plus overtime, and on other occasions, by her own testimony, she was paid for hours she did not work.